# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

BINA RADOSTI, *et al.*,

    Plaintiffs,

v.

ENVISION EMI, LLC,

    Defendant.

</td><td>

Civil Action No. 09-887 (CKK)

</td></tr>
</table>

## MEMORANDUM OPINION
(June 8, 2010)

This is a class action lawsuit arising out of a series of youth conferences sponsored by Defendant Envision EMI, LLC ("Envision") in and around Washington, D.C. surrounding the inauguration of President Barack Obama in January 2009.  Plaintiffs Bina Radosti, Joshua Rottman, Sally Rife, Heather Kern, Zachary Johnson Burton, and Latiana Carter (collectively, "Plaintiffs") bring this action on behalf of themselves and all those similarly situated alleging breach of contract, negligent misrepresentation, and violations of state consumer protection laws by Envision.  After a successful mediation, the parties reached a settlement, which they have submitted to this Court for approval pursuant to Federal Rule of Civil Procedure 23(e).  On December 17, 2009, the Court preliminarily approved the settlement agreement, conditionally certified the settlement class, and approved procedures to notify members of the settlement class of their right to object to or opt out of the settlement.  After objections and opt-out notices were received, the parties filed their [24] Joint Motion for Final Approval of Class Action Settlement, which is presently pending before the Court.  Plaintiffs also filed a [25] Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards.  The Attorneys General of twenty-two

different states (including the District of Columbia) filed a [35] Brief *Amicus Curiae* Opposing

Final Approval of the Proposed Settlement Agreement, to which the parties filed a joint response.

On May 25, 2010, the Court held a Fairness Hearing to consider whether the proposed settlement

agreement is "fair, reasonable, and adequate."  The arguments and representations made on the

record during that Fairness Hearing are expressly incorporated and made a part of this

Memorandum Opinion.

Upon a searching review of the parties' preliminary and final motions for approval of the

settlement agreement and certification of the settlement class, the filings submitted in connection

with the objections and opt-outs, the brief *amicus curiae* of the Attorneys General and the

response thereto, the arguments and representations made during the Fairness Hearing, the

relevant statutes and case law, and the entire record herein, the Court finds that the terms of the

settlement agreement, excluding the potential *cy pres* fund for later evaluation, are fair,

reasonable, and adequate and should be approved.  As explained below, the Court makes the

following findings: the Court has jurisdiction over this action; the class may be certified for

settlement purposes; the settlement agreement was negotiated at arms-length by experienced

counsel with the assistance of an experienced mediator after an appropriate amount of

investigation and informal discovery, and it is the opinion of the experienced counsel and

mediator that the settlement is fair, adequate, and reasonable; the vouchers to be awarded under

the settlement agreement provide meaningful value to class members because of their high face

value, their transferability, and their seven-year duration; choice-of-law issues and Envision's

financial condition significantly undermine Plaintiffs' likelihood of obtaining meaningful class-

wide relief at trial; the settlement is supported by the class, as demonstrated by the low number of

objectors and opt-outs; and the *cy pres* fund established by the settlement agreement—if properly administered—will ensure that Envision substantially disgorges the profits from its alleged misconduct.  Accordingly, the Court shall GRANT the parties' [24] Joint Motion for Final Approval of the Settlement Agreement, HOLD IN ABEYANCE approval of the proposed *cy pres* fund, and HOLD IN ABEYANCE Plaintiffs' [25] Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards.

## I.  BACKGROUND

### A.    *Factual and Procedural Background*

Envision is a Virginia limited liability company[1] that sponsors educational conferences for youth.  This lawsuit pertains to three student conferences sponsored by Envision in connection with the inauguration of President Barack Obama in Washington, D.C. in January 2009.  The three conferences were designated by age group: (1) the Junior Presidential Youth Inaugural Conference, for students in the fifth through eighth grades at the time of the inauguration; (2) the Presidential Youth Inaugural Conference, for high school students; and (3) the University Presidential Inaugural Conference, for college students over the age of 18 (collectively, the "Conferences").  Envision began soliciting participation in the Conferences in January 2008.  Plaintiffs allege that Envision represented to potential participants that they would be present for the inauguration of the President and Vice President, witness the inaugural parade, and attend a black tie gala inaugural ball.  *See* First Am. Compl. ¶ 41.  Plaintiffs also allege that Envision represented that participants would, among other things, have "private access" to the

---

[1] Although Plaintiffs allege in the First Amended Complaint that Envision is headquartered in the District of Columbia, the parties agreed during the Fairness Hearing that Envision is based in Vienna, Virginia.

Smithsonian Institution on the National Mall, hear a keynote speech from famed cyclist Lance Armstrong, and meet historians, political experts, leading decision makers, and White House officials. *See id.* ¶¶ 41-42. Envision also allegedly informed invitees that they were among a "few select students" invited to attend one of the Conferences. *See id.* ¶ 43. Approximately 15,000 students paid between $2380 and $2729 in tuition costs to attend the Conferences.

Plaintiffs allege that the many of the promises made by Envision were not delivered during the Conferences. They claim that Envision "uniformly failed to provide access to witness the inauguration and/or provide special access to the Mall for the inauguration and instead told students they were 'on their own.'" First Am. Compl. ¶ 53. They also claim that Envision failed to provide tickets to the inaugural parade or to an official Black Tie Gala inaugural ball, deliver many of the promised speakers, and provide adequate housing and transportation to the over 15,000 students who attended the Conferences. *Id.* ¶¶ 54-57. Envision also allegedly failed to disclose material facts regarding the Conferences, including: that Envision had made no arrangements to provide tickets so that Conference attendees could actually witness the inauguration or the inaugural parade; that the "Black Tie Gala Inaugural Ball" had no affiliation with any of the official inaugural balls held in Washington, D.C. and would be held in school gymnasium-style facilities where no formal wear was required; and that the Conferences were not "selective" or "exclusive." *Id.* ¶ 60. Plaintiffs contend that if they had known these facts, they would not have made the decision to pay Envision to attend the Conferences.

After many Conference attendees complained about their experiences, Envision established an informal claims procedure. Envision sent a claim form to approximately 2000 individuals who had contacted Envision to express a concern about the Conferences. The claim

4

form allowed each attendee to indicate which events they had missed during the Conferences, and Envision assigned a reimbursement value to each missed event.  On average, each claimant received about $400 in cash compensation.  Each claimant also received a voucher worth $750 that could be applied toward tuition at future Envision programs.[2]  In addition, Envision paid cash settlements (ranging from approximately $500 to full refunds) to about 150 individuals, some of whom had filed lawsuits in small claims courts.  Two individuals also received settlements worth approximately $6000, one of whom allegedly suffered from physical injuries and emotional trauma and the other of whom filed a lawsuit in New York Supreme Court.  Envision spent approximately $900,000 on all of these claims and settlements and issued vouchers worth approximately $1,458,000.[3]  No determination as to liability has ever been made.

On March 19, 2009, several attendees at the Conferences brought a class action lawsuit in the United States District Court for the Northern District of Illinois against Envision and Congressional Youth Leadership Council ("CYLC"), an entity whose assets were purchased by Envision in 2007, alleging breach of contract.  *See* Complaint, *Bowman v. Cong. Youth Leadership Council*, Civ. No. 09-1727 (N.D. Ill. filed Mar. 19, 2009).  After Envision made offers of judgment under Rule 68 to the named plaintiffs in that action, Envision and CYLC moved to dismiss the class action as moot.[4]  The plaintiffs then filed an amended complaint

_____

[2] Alternatively, claimants could elect to forego their cash compensation and receive double the value of their settlement as a voucher.  Roughly twenty percent of claimants opted for a voucher-only settlement.

[3] The facts in this paragraph are derived from representations made by Envision's counsel during the Fairness Hearing, as well as from information provided by the parties and the objectors.

[4] Envision paid $5000 to each of the *Bowman* class representatives to settle their claims.

substituting four other class members as class representatives.  Envision filed an answer to the amended complaint, and the parties made Rule 26 initial disclosures and began discussing the timing and logistics of discovery.  In addition, the plaintiffs filed a motion for class certification, which was opposed by Envision.

The instant action was brought separately by Bina Radosti, on her own behalf and as next friend of Dash Radosti, and Joshua Rottman on May 13, 2009, against Envision and CYLC, alleging three causes of action: (1) violations of the D.C. Consumer Protection Procedures Act ("CPPA"), D.C. Code §§ 28-3901 *et seq.*; (2) negligent misrepresentation; and (3) breach of contract.  *See* Compl. ¶¶ 91-109.  The *Radosti* plaintiffs filed a motion before the Judicial Panel on Multidistrict Litigation seeking to transfer the *Bowman* case to this Court, and Envision filed a separate motion to transfer the *Bowman* case to this Court for consolidated proceedings.

> B.     *Settlement Negotiations*

Shortly after this action was filed, the parties in both this case and the *Bowman* case began to engage in formal and informal settlement negotiations.  The parties held in-person meetings in Washington, D.C. and Chicago, Illinois and participated in numerous telephone conference calls.  In addition, Envision provided informal discovery to Plaintiffs regarding its insurance coverage, the number of complaints it had received and resolved, the nature of the Conferences, and the current financial condition of the company.

On August 4, 2009, the parties conducted a formal mediation session before the Honorable Daniel Weinstein (Ret.) of Judicial Arbitration and Mediation Services.  *See* Joint Mot. for Final Approval, Aff. of Hon. Daniel Weinstein ¶ 3.  The mediation lasted for approximately 14 hours, during which time the parties engaged in extensive and sometimes

contentious negotiations.  *See id.* ¶ 6.  Although the mediator believed at several times that no

settlement would be reached, the parties ultimately reached an agreement to compromise the

litigation.  *Id.*  The parties fully negotiated and agreed to the relief to be afforded the class

members prior to beginning any discussions about attorneys' fees, costs, or class representative

incentive awards.  *Id.* ¶ 8.

Following the mediation, the *Bowman* plaintiffs agreed to voluntarily dismiss their

pending case and consolidate their claims in this action.  On August 13, 2009, the *Bowman*

action was dismissed without prejudice pursuant to the settlement agreement.  On November 19,

2009, the Plaintiffs filed an Amended Complaint against Envision incorporating the remaining

class representatives from the *Bowman* action (Sally Rife, on her own behalf and as next friend

of Franchesca Rife, Heather Kern, Zachary Johnson Burton, and Latiana Carter).  The parties

engaged in detailed negotiations and exchanged numerous drafts of the settlement agreement

before presenting it to this Court for preliminary approval on December 10, 2009.

C.       *The Terms of the Settlement Agreement*

The settlement agreement provides relief to the settlement class in the form of vouchers

that can be used towards tuition at future Envision programs.[5]  The settlement class is defined as

all individuals who attended one of the Conferences (or, for those individuals under 18 years of

age, their parent or legal guardian) who have not, prior to the certification of the settlement class,

received from Envision any refund, voucher, or other compensation in settlement of a claim

arising out of the Conferences.  *See* Joint Mot. for Prelim. Approval, Class Action Settlement

---

[5] Although the parties use the term "tuition" in the settlement agreement, Envision has explained that for most of its programs, the tuition fee includes lodging and meals for program attendees.

Agreement ("Settlement Agreement") at 3-4.  The settlement agreement establishes a settlement claims procedure in which class members may apply for a settlement payment consisting of two vouchers worth $625 each (for a total value of $1250).  The vouchers may be used within seven years of the date of issuance toward payment of tuition for a future Envision conference or program.  The vouchers must be used one at a time unless tuition for a program is $3500 or more, in which case both vouchers may be used together.[6]  The vouchers are fully assignable and transferable to anyone, but they may only be redeemed by (a) a family member[7] of a class member or (b) any other student who has a 3.5 or higher grade point average or who receives a teacher recommendation at the time of enrollment in the Envision conference or program.[8]  In a First Amendment to the Settlement Agreement, Envision agreed to maintain a page on its website that describes how to redeem the vouchers and further explains that vouchers are fully transferable.  *See* Joint Response to Br. *Amicus Curiae*, First Amendment to Class Action Settlement Agreement ("Settlement Agreement Amendment")[9] at 2.  As amended, the settlement agreement also provides that at least ten percent of all attendees enrolling in any future Envision

---

[6] The cost of tuition for Envision programs ranges from approximately $1400 to $5200, meaning that the discount value of the vouchers toward any particular program ranges from approximately 18% to 45%.

[7] The Settlement Agreement does not define "family member," although the parties explained at the Fairness Hearing that they intended the term to apply only to immediate family members, such as siblings or stepsiblings, and not to more distant relatives such as cousins.

[8] Envision avers that this is a standard eligibility requirement for attendance at its programs.

[9] The Settlement Agreement Amendment strikes paragraphs 10-14 of the original Settlement Agreement and substitutes new paragraphs 10-14.  Except where otherwise noted, the Court's discussion of the settlement incorporates the language of the Settlement Agreement Amendment.

conference or program may use such vouchers. *Id.* at 1.

In the original settlement agreement, a class member seeking to qualify for the vouchers would have to complete and submit to Envision (within 90 days of the effective date of the settlement agreement) a verification form indicating that the student who attended one of the Conferences involuntarily missed one or more of the three key inaugural events (i.e., the inauguration, the inaugural parade, and the black tie inaugural ball). As amended in response to objections, the Settlement Agreement requires each class member to verify only that the student who attended one of the Conferences was "unsatisfied" with his or her experience. *See* Settlement Agreement Amendment at 2. Envision will provide monthly reports to class counsel indicating the number of claims received, Envision's determination on each claim, and the reasons supporting each determination during the claims period; Envision will also provide a final report within 30 days after the claims period. *Id.* at 3-4. In the event that a dispute arises as to whether a class member properly submitted a verification, Envision shall indicate that information in its monthly report, and Envision will attempt to resolve the dispute in good faith with class counsel. *Id.* at 2. If the dispute cannot be resolved, class counsel may seek intervention from this Court. *Id.*

The settlement agreement also provides that if Envision does not distribute at least $8 million worth of vouchers to class members, Envision shall establish a "Class Settlement Scholarship Fund" ("CSSF") in an amount equivalent to the difference between the voucher payments and $8 million. In effect, this provision creates a potential *cy pres*[10] fund and ensures

---

[10] The *cy pres* doctrine, as used in the class action context, permits unclaimed funds to be distributed to the "next best" class, thus maximizing the number of individuals compensated. *See Democratic Cent. Comm. v. Wash. Metro. Area Transit Comm'n*, 84 F.3d 451, 455 (D.C. Cir.

that Envision will distribute at least $8 million in discounts off future programs. As amended, the settlement agreement provides that Envision shall award partial or total scholarships from the CSSF to an academically qualified applicant to attend an Envision program based on economic or other considerations. Envision shall be required to distribute scholarships totaling at least 15% of the CSSF each year until the CSSF is depleted, which must occur within seven years of its creation. In order to deplete the CSSF, the scholarships must not only be distributed but actually redeemed by individuals attending Envision programs. Envision may, in its discretion, distribute additional scholarships each year totaling up to 5% of the CSSF to independent, nationally recognized organizations that focus on education and/or leadership skills such as the National 4-H Council, Boy Scouts of America, and the Girl Scouts of the USA. Envision shall include on all program websites information about how students may apply for scholarships, and class members will be eligible for these scholarships. Envision shall administer the CSSF separately from any other tuition assistance or scholarship program, and Envision will not be required to include in or add to the CSSF any amounts for unused vouchers distributed to class members. The settlement agreement calls for Envision to provide semiannual reports to class counsel on the administration of the CSSF, including amounts awarded and redeemed and an accounting of any balance remaining until the CSSF is depleted.

 As part of the settlement agreement, class members agree to unconditionally release any and all claims against Envision, whether known or unknown, arising out of the Conferences and the allegations in the *Radosti* and *Bowman* complaints. Class members further agree that the voucher payments are their exclusive remedy for their claims. The agreement provides that in

---

1996).

addition to the voucher payments, Envision agrees to provide $2500 to each of the six named

class representatives, subject to court approval.  Envision also agrees to pay, subject to court

approval, a total award to class counsel[11] of $1,455,000 for expenses and fees.  The agreement

states that no portion of the settlement payments shall be reduced in any way to pay class

representatives or class counsel.

> C.     *Form and Manner of Notice to the Class, Objections & Opt-Outs*

On December 17, 2009, this Court granted preliminary approval of the settlement

agreement and conditionally certified the settlement class.  Pursuant to the settlement agreement,

notice was provided to 13,415 class members by electronic mail and 343 class members by mail.

*See* Joint Mot. for Final Approval, Aff. of Jennifer M. Keough ¶ 3.  Envision's notice provider

also hosted a website with information regarding the settlement agreement that received 1125

hits through March 11, 2010.  *See id.*  Class members were informed of their opportunity to

request exclusion from the settlement class, i.e., opt out, or object to the terms of the settlement

agreement.  Objections and opt-outs were due within 45 days after notice was sent.

Class counsel received 15 total objections, one of which was untimely.[12]  This represents

approximately one tenth of one percent of the settlement class.  Many of the objectors indicated

that they were dissatisfied with their experience at the Conferences and would never attend

another Envision program.  Several objectors indicated that it would be impossible or impractical

---

[11] In its Order Preliminarily Approving Class Action Settlement Agreement,
Conditionally Certifying Settlement Class and Approving Class Action Notice Plan, the Court
appointed James Pizzirusso, Esq., and Robert Coleman, Esq., as class counsel to represent the
settlement class.  *See* Docket No. [19] ¶ 11.

[12] The Court has considered all of the objections, but the Court notes that the untimely
objection was substantially similar to the views expressed by timely objectors.

to attend a future Envision program, either because they would no longer be eligible students or because international travel would be required in order to attend.[13]  These objectors generally expressed a preference for a cash settlement in lieu of a voucher that they would be unlikely to use.  Several objectors also expressed concern that the vouchers would only cover a portion of the tuition at future programs, so they would be required, by their calculations, to spend hundreds, if not thousands, of additional dollars in order to take advantage of the vouchers.  Several objectors complained that even though the vouchers would be transferable to family members or other qualified attendees, they did not have eligible family members and it would be difficult or burdensome for them to locate other qualified individuals who might be interested in purchasing a voucher.  One objector expressed concern that named class representatives and Class Counsel receive cash while class members only qualify for tuition vouchers.  Several objectors complained that the settlement agreement did not sufficiently punish Envision for its misconduct and suggested that Envision be required to provide at least a partial refund.

Class counsel also received 25 total opt-outs.[14]  Several of the individuals seeking exclusion from the settlement class indicated that they enjoyed their experience at the Conferences and did not want to be a part of this litigation, while others gave no reason for opting out.  Only two of the opt-outs indicated that they were displeased with the settlement.

---

[13] Some of the students attending the Conferences were from overseas, and two objections came from individuals in the United Kingdom.

[14] The parties indicated that one of the opt-out notices was untimely filed; however, the parties confirmed at the Fairness Hearing that they will accept the untimely opt-out and exclude that individual from the settlement class.

D.       *Joint Motion for Final Approval and Fairness Hearin*g

On March 12, 2010, after the objections and opt-outs were received, the parties filed their

Joint Motion for Final Approval of the Class Action Settlement.  On March 16, 2010, Plaintiffs

filed a Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards.  On

April 14, 2010, the Attorneys General of twenty-two states (including the District of Columbia)

filed a Brief *Amicus Curiae* Opposing Final Approval of the Proposed Settlement Agreement.

The Attorneys General contend that the settlement agreement should be subjected to heightened

scrutiny as a coupon settlement pursuant to the Class Action Fairness Act of 2005, Pub. L. No.

109-2, 119 Stat. 4 (codified in scattered sections of title 28 of the United States Code) ("CAFA").

The Attorneys General also argue that the voucher payments offer low value compared to

disproportionate attorney and incentive fees and do not represent a reasonable settlement in light

of the strength of Plaintiffs' case.  The Attorneys General also criticize the Class Settlement

Scholarship Fund because unlike a true *cy pres* fund, Envision retains control over the fund and

has nearly complete discretion over how to disperse the funds.

The Court ordered the parties to file a brief in response to the Attorneys General's

opposition, which they filed on April 30, 2010.  In their response brief, the parties noted that they

had amended the settlement agreement so as to provide that any class member who was

dissatisfied could obtain vouchers, whether or not he or she missed any of the three key inaugural

events.  The amended settlement agreement also clarified some aspects of how the CSSF would

be administered to address some of the Attorneys General's concerns.  The response brief also

addressed other arguments raised by the Attorneys General, which shall be addressed below.

The Court held a Fairness Hearing on May 25, 2010, with counsel for the parties as well

as a legal representative of the Attorneys General present.  None of the potential class members

sought permission to speak at the Fairness Hearing.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a

certified class may be settled . . . only with the court's approval."  A class may be certified for

settlement purposes only, and such "settlement-only" classes have become increasingly

prominent.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618 (1997).  When certifying a

class for settlement purposes only, a court must consider whether the proposed class meets the

requirements of Federal Rule of Civil Procedure 23, although the court need not determine

whether the case, if tried, would present intractable management problems.  *Id.* at 620; *Thomas v.

Albright*, 139 F.3d 227, 234 (D.C. Cir. 1998).  As proponents of class certification, Plaintiffs

have the burden of establishing that each of the elements of Rule 23(a) are met and that the class

is maintainable pursuant to one of Rule 23(b)'s subdivisions.  *Amchem*, 521 U.S. at 614; Fed. R.

Civ. P. 23; *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 529 (D.C. Cir. 2006).  The four

prerequisites to a class action lawsuit under Rule 23(a) are: (1) the class is so numerous that

joinder of all members is impracticable; (2) there are questions of law or fact common to the

class; (3) the claims or defenses of the representative parties are typical of the claims and

defenses of the class; and (4) the representative parties will fairly and adequately protect the

interests of the class.  *See* Fed. R. Civ. P. 23(a).  These four requirements are referred to as

numerosity, commonality, typicality, and adequacy of representation.  In addition, Plaintiffs must

demonstrate that the class is maintainable under Rule 23(b).  In the instant case, Plaintiffs seek

certification under Rule 23(b)(3) and, as such, must show that "questions of law or fact common

to class members predominate over any questions only affecting individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are referred to as predominance and superiority. Among the factors that may be considered are (a) the class members' interest in individually controlling the prosecution of separate actions; (b) the extent and nature of any litigation already begun by class members; and (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum. *Id.*

Approval of a proposed class action settlement lies within the discretion of the District Court. *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 103 (D.D.C. 2004) ("*Vitamins II*"). Pursuant to Federal Rule of Civil Procedure 23(e), a court may approve a settlement that would bind class members "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "In a proposed settlement under which class members would be awarded coupons, the court may approve the proposed settlement only after a hearing to determine whether, and making a written finding that, the settlement is fair, reasonable, and adequate for class members." 28 U.S.C. § 1712(e). In considering whether to approve a proposed class action settlement, the court must strike a balance between a rubber stamp approval and "the detailed and thorough investigation that it would undertake if it were actually trying the case." *United States v. District of Columbia*, 933 F. Supp. 42, 47 (D.D.C. 1996). Furthermore, there is a long-standing judicial attitude favoring class action settlements, and the court's "discretion is constrained by the 'principle of preference' favoring and encouraging settlement in appropriate cases." *Vitamins II*, 305 F. Supp. 2d at 103 (quoting *Pigford v. Glickman*, 185 F.R.D. 82, 103 (D.D.C. 1999).

15

## III. DISCUSSION

The Court shall begin its analysis with the topic of class certification, since the settlement class must comport with the requirements of Rule 23. The Court shall then address the reasonableness of the Settlement Agreement, taking into consideration the objections filed by the class members, the opposition of the Attorneys General as *amici curiae*, and the parties' briefs in support of final approval. It is undisputed that the Court has jurisdiction over this class action under the diversity statute as amended by CAFA. *See* 28 U.S.C. § 1332(d).

A.      *Certification of the Settlement Class*

This Court conditionally certified the settlement class in its preliminary approval order. At the final approval stage, the Court now provides a more detailed analysis of the Rule 23 requirements for certification of a settlement class.

1.      Rule 23(a) Requirements

a.      Numerosity.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement "imposes no absolute limitations," but rather "requires examination of the specific facts of each case." *Gen. Tele. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). Courts in this District have generally found that the numerosity requirement is satisfied and that joinder is impracticable where a proposed class has at least forty members. *Bynum v. District of Columbia*, 214 F.R.D. 27, 32 (D.D.C. 2003); *Thomas v. Christopher*, 169 F.R.D. 224, 237 (D.D.C. 1996), *aff'd in part and rev'd in part*, 139 F.3d 227 (D.C. Cir. 1998). A plaintiff need not provide the exact number of potential class members to satisfy the requirement, so long as there is a reasonable basis for the estimate

provided. *Bynum*, 214 F.R.D. at 32-33; *Pigford*, 182 F.R.D. at 347.  Here, the parties agree that

the number of class members is approximately 13,500.  The Court therefore easily finds that

joinder would be impracticable and that the numerosity requirement of Rule 23(a)(1) is satisfied.

        b.      Commonality

Rule 23(a)(2) requires that there be questions of law or fact common to the class.  Fed. R.

Civ. P. 23(a)(2).  "The commonality test is met when there is at least one issue, the resolution of

which will affect all or a significant number of the putative class members."  *In re Lorazepam &*

*Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 26 (D.D.C. 2001) ("*Lorazepam I*") (quoting

*Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997)); *see also Garcia v. Johanns*,

444 F.3d 625, 631 (D.C. Cir. 2006).  Significantly, "factual variations among the class members

will not defeat the commonality requirement, so long as a single aspect or feature of the claim is

common to all proposed class members."  *Bynum*, 214 F.R.D. at 33.  Here, there are many

common factual and legal issues among the class members.  For example, all members of the

settlement class paid tuition to attend the Conferences, and Envision made the same or

substantially similar representations to all class members regarding the services that would be

provided at the Conferences.  Common legal issues include whether Envision's advertisements

or assertions were false and misleading and whether they were material, as well as whether

Envision breached its contracts with the class members by failing to provide the promised

services.  The Court therefore concludes that the commonality requirement of Rule 23(a)(2) is

met.

        c.      Typicality.

Rule 23(a)(3) requires a finding that "the claims or defenses of the representative parties

are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  The typicality

requirement is "intended to assess whether the action can be efficiently maintained as a class and

whether the named plaintiffs have incentives that align with those of the absent class members so

as to assure that the absentees' interests will be fairly represented." *Lorazepam I*, 202 F.R.D. at

27 (citations omitted).  The facts and claims of each class member do not have to be identical to

support a finding of typicality; rather, "[t]ypicality refers to the nature of the claims of the

representative, not the individual characteristics of the plaintiff," *In re Cardizem CD Antitrust*

*Litig.*, 200 F.R.D. 297, 304 (E.D. Mich. 2001).  The typicality requirement is satisfied "if each

class member's claim arises from the same course of events that led to the claims of the

representative parties and each class member makes similar legal arguments to prove the

defendant's liability." *Lorazepam I*, 202 F.R.D. at 27 (quoting *Pigford*, 182 F.R.D. at 349).

Here, the claims of the named plaintiffs and those of the absentee members of the settlement

class arise from the same events and involve the same legal theory and elements of proof.

Named plaintiffs and class members are individuals who attended the Conferences and who have

not previously settled their claims with Envision.  There is at least one class representative who

attended each of the three Conferences, and therefore the three student groups (i.e., junior high,

high school, and college) are represented.  As their claims can only be described as typical of the

Settlement Class, the Court finds that the typicality requirement is satisfied.

d.    Adequacy of representation.

Rule 23(a)(4) requires a finding that "the representative parties will fairly and adequately

protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "Two criteria for determining the

adequacy of representation are generally recognized: (1) the named representative must not have

18

antagonistic or competing interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997) (internal quotation omitted).  The only evidence the Court has been presented with that suggests that the named plaintiffs' interests are in any way antagonistic to those of absentee members of the settlement class is the fact that under the Settlement Agreement, the parties agree that the class representatives should receive cash incentive awards in the amount of $2500 each. However, the Court notes that it is within the Court's discretion to grant the incentive awards, and the class representatives had no assurance of receiving such awards during the pendency of this litigation.  Moreover, it appears that throughout this litigation, the named plaintiffs and the absentee class members shared the identical objectives of establishing liability and obtaining damages.  The Court is satisfied that the named plaintiffs' counsel have adequately prosecuted the interests of the class.  Plaintiffs' attorneys have demonstrated experience handling class action lawsuits and have undertaken a substantial investigation into the merits of claims that could be asserted by the class and the financial condition of Envision to satisfy a judgment.  *See generally* Joint Mot. for Final Approval, Decl. of James J. Pizzirusso & Decl. of Robert F. Coleman.  Therefore, the Court finds that the adequacy requirement is satisfied.

      2.     <u>Rule 23(b) Requirements</u>

In order to certify the settlement class pursuant to Rule 23(b)(3), the Court must find that questions of law or fact common to class members predominate over questions affecting only individual members and that a class action is superior to other available methods for resolving the controversy.

a.    Predominance.

"There is no definitive test for determining whether common issues predominate, however, in general, predominance is met when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position."  *Cohen v. Warner Chilcott Public Ltd. Co.*, 522 F. Supp. 2d 105, 116 (D.D.C. 2007) (quotation marks and citations omitted).   Common issues must predominate but need not be dispositive.  *Id.*  Here, Plaintiffs allege that Envision made misleading or negligent misrepresentations in their advertising and promotional materials for the Conferences, which every class member received and relied on in deciding to pay tuition and attend the Conferences.  Plaintiffs further allege that Envision breached its contract with Plaintiffs by failing to deliver on specific promises about what would be provided at the Conferences.  All of these issues involve single acts or omissions by Envision that pertain to each member of the class.  Although there may be some individualized questions relating to damages for the breach of contract claim, this does not defeat class certification under Rule 23(b)(3).  *See Johnson v. District of Columbia*, 248 F.R.D. 46, 57 (D.D.C. 2008) ("[T]he mere existence of individual damages issues in a Rule 23(b)(3) class does not cause individual issues to predominate over common issues on liability or causation.")  Because Plaintiffs' claims pertain largely to actions taken by Envision vis-a-vis the class, the Court finds that the predominance requirement of Rule 23(b)(3) is satisfied.

b.    Superiority.

"The superiority requirement ensures that resolution by class action will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons

similarly situated, without sacrificing procedural fairness or bringing about other undesirable consequences." *Cohen*, 522 F. Supp. 2d at 117 (quoting *Amchem*, 521 U.S. at 615).  The superiority requirement is easily met here.  The number of members in the settlement class is approximately 13,500, and this class action settlement would resolve the remaining claims of all of the Conferences attendees.  Because the amount of damages for each class member is relatively small compared to the cost of litigating an individual claim, resolution by class action provides a superior method of adjudication and ensures that class members will receive equal treatment.  Accordingly, the Court finds that the superiority requirement of Rule 23(b)(3) is satisfied.

Because the class is being certified for purposes of settlement only, the Court need not consider whether the case, if tried, would present intractable management problems.  *Amchem*, 521 U.S. at 620.  However, the Court has considered all of the other relevant factors under Rule 23(a) and Rule 23(b)(3).  The Court notes that since the settlement class was conditionally certified and the settlement was preliminarily approved, none of the objectors have argued that class certification is improper.[15]  Accordingly, the Court is satisfied that the proposed settlement class satisfied the requirements of Rule 23, and therefore the Court shall certify the settlement class.

3.  Class Counsel

Pursuant to Rule 23(g), the Court is required to appoint class counsel to represent the settlement class.  In doing so, the Court must consider the work counsel has done in identifying

---

[15] Although the Attorneys General argue that heightened scrutiny should apply to the settlement, they do not argue that certification of the settlement class is improper.

or investigating potential claims in the action, counsel's experience in handling class actions,

other complex litigation, and the types of claims asserted in this action, counsel's knowledge of

the applicable law, and the resources that counsel will commit to representing the class.  *See* Fed.

R. Civ. P. 23(g)(1)(A).  The Court finds that Messrs. Pizzirusso and Coleman have adequately

represented the interests of class members and should be appointed class counsel.

> B.      *The Fairness, Adequacy, and Reasonableness of the Settlement*

Pursuant to Rule 23(e), the Court must determine whether the proposed settlement is

"fair, adequate and reasonable and is not the product of collusion between the parties."  *Thomas*

*v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998) (citation omitted).  There is no single test in this

Circuit for determining whether a proposed class action settlement should be approved under

Rule 23(e).  *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 565 F. Supp. 2d 49, 55

(D.D.C. 2008); *Pigford*, 185 F.R.D. at 98.  However, in making such a determination, courts in

this Circuit have considered the following factors, among others: (1) whether the settlement is

the result of arm's-length negotiations; (2) the terms of the settlement in relation to the strength

of plaintiffs' case; (3) the status of the litigation at the time of the settlement; (4) the reaction of

the class; and (5) the opinion of experienced counsel.  *Vitamins II*, 305 F. Supp. 2d at 104 (citing

numerous cases); *In re Baan Co. Secs. Litig.*, 284 F. Supp. 2d 62, 64-67 (D.D.C. 2003).

In their brief *amicus curiae*, the Attorneys General contend that the Class Action Fairness

Act ("CAFA") mandates heightened scrutiny of so-called "coupon settlements."[16]  CAFA

---

[16] Although Congress did not define the term "coupon" in the statute, courts have
generally considered a coupon settlement to be one that provides benefits to class members in the
form of a discount towards the future purchase of a product or service offered by the defendant.
*See, e.g.*, *Fleury v. Richemont N. Am., Inc.*, No. C-05-4525, 2008 WL 3287154, at *2 (N.D. Cal.
Aug. 6, 2008) ("While CAFA does not expressly define what a coupon is, the legislative history

establishes the following standard for judicial scrutiny of coupon settlements:

> In a proposed settlement under which class members would be awarded coupons, the court may approve the proposed settlement only after a hearing to determine whether, and making a written finding that, the settlement is fair, reasonable, and adequate for class members. The court, in its discretion, may also require that a proposed settlement agreement provide for the distribution of a portion of the value of unclaimed coupons to 1 or more charitable or governmental organizations, as agreed to by the parties. The distribution and redemption of any proceeds under this subsection shall not be used to calculate attorneys' fees under this section.

28 U.S.C. § 1712(e).  The "fair, reasonable, and adequate" standard imposed by CAFA is identical to the language in Rule 23(e), and the only additional requirement explicit in the statute is that the Court must hold a hearing and make a written finding that the settlement meets that standard.  CAFA also places other restrictions on coupon settlements, such as requiring that attorneys' fee awards attributable to the value of coupons be based on the value of the coupons actually redeemed.  *See* 28 U.S.C. § 1712(a).

The Attorneys General argue that based on the legislative history of CAFA, which includes many statements critical of coupon settlements, Congress intended § 1712(e) to require heightened scrutiny of proposed coupon settlements.  In addition, the Attorneys General cite three federal decisions purportedly recognizing this heightened scrutiny, relying most heavily on *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1321 (S.D. Fla. 2007).  In *Figueroa*, the court held that "because the CAFA requirement in section 1712(e) applies only to coupon settlements, and because it is codified to further Congress' objectives and concerns regarding the fairness *vel non* of coupon settlements in particular, the [court] interprets the statutory directive

---

suggests that a coupon is a *discount* on another product or service offered by the defendant in the lawsuit.")  The parties do not dispute that the vouchers for future Envision programs qualify as coupons for purposes of CAFA.

to imply the application of a greater level of scrutiny to the existing criteria than existed pre-CAFA." The *Figueroa* court also noted that the CAFA standard is identical to that of Rule 23 and that coupon settlements have been extensively criticized even before CAFA. Therefore, it is unclear as to what degree of added scrutiny the *Figueroa* court "implied" from CAFA. Defendants also cite *Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006), a case that arose before CAFA in which the Seventh Circuit in *dictum* "note[d] that in [CAFA] Congress required heightened judicial scrutiny of coupon-based settlements"; and *Kearns v. Ford Motor Co.*, No. CV 05-5644, 2005 WL 3967998, at *1 (N.D. Cal. Nov. 21, 2005), in which the court said that CAFA "put significant limits on so-called 'coupon settlements' which produce hardly any tangible benefits for the members of the plaintiff class, but generate huge fees for class attorneys." Neither of these cases provides any meaningful discussion of what "heightened scrutiny" under CAFA actually means.

This Court finds that the judicial scrutiny called for by § 1712(e) is indistinct from the scrutiny required by Rule 23(e), with the understanding that coupon settlements pose a particular risk of unfairness and unreasonableness because of the increased possibility that the benefits afforded to class members will never be realized, since class members are provided with a future discount on a product or service with which they were previously dissatisfied. *See Figueroa*, 517 F. Supp. 2d at 1302 ("[There are] three major problems with coupon settlements: they often do not provide meaningful compensation to class members; they often fail to disgorge ill-gotten gains from the defendant; and they often require class members to do future business with the defendant in order to receive compensation.") This is consistent with the finding of the court in *True v. American Honda Motor Co.*, No. EDCV 07-287, 2010 WL 707338, at *12 (C.D. Cal.

2010) (Feb. 26, 2010).  In *True*, the court acknowledged the wide range of judicial and scholarly

criticism of coupon settlements and noted that the court's role in evaluating coupon settlements

is to discern whether the value of a specific coupon settlement is reasonable in relation to the

value of the claims surrendered.  With that standard in the mind, the Court shall review the

proposed settlement agreement in light of the factors enumerated above and the objections that

have been received.

      1.    <u>Arm's-Length Negotiation and the Opinion of Experienced Counsel</u>

"A presumption of fairness, adequacy, and reasonableness may attach to a class

settlement reached in arm's-length negotiations between experienced, capable counsel after

meaningful discovery."  *Vitamins II*, 305 F. Supp. 2d at 104.  In this case, the parties reached a

settlement only after a lengthy mediation session that was presided over by an experienced

mediator.  Although the mediation occurred before formal fact discovery began in this action,

Plaintiffs' counsel had already conducted a substantial factual investigation into the experience

of many class members at the Conferences, conducting interviews with dozens of class members

and collecting various newspaper articles, internet weblogs, and other reports about the

Conferences.  *See* Mem. in Supp. of Joint Mot. for Final Approval at 10.  In addition, Envision

provided Plaintiffs' Counsel with significant informal discovery relating to its financial

condition, insurance coverage, and resolution of previous complaints by attendees at the

Conferences.  Therefore, it appears that the parties were well-positioned to mediate their claims,

and all the evidence before the Court indicates that this settlement is the product of arm's-length

negotiation between experienced counsel.

The opinion of experienced counsel "should be afforded substantial consideration by a

court in evaluating the reasonableness of a proposed settlement." *Cohen*, 522 F. Supp. 2d at 121 (citation omitted).  In this case, Class Counsel has substantial experience litigating consumer class actions and are of the opinion that the settlement is fair, reasonable, and in the best interests of the settlement class.  *See* Joint Mot. for Final Approval, Decl. of Robert Coleman ¶ 17 & Decl. of James Pizzirusso ¶ 20.  In addition, the mediator has opined that the settlement is fair and reasonable, based on "the significant recovery that the settlement affords the members of the settlement class, Envision's current and foreseeable economic condition, the difficulties inherent in prosecuting any class action of this size, Envision's defenses to Plaintiffs' claims, and the risks and expenses to Envision to defend Plaintiffs' claims."  *See* Joint Mot. for Final Approval, Decl. of Hon. Daniel Weinstein ¶ 9.  The opinion of the mediator and experienced Class Counsel weigh in favor of approving the settlement agreement.

### 2.      The Terms of the Settlement in Relation to the Strength of Plaintiffs' Case

The Settlement Agreement provides a benefit to class members in the form of two $625 transferable vouchers for tuition at future Envision programs, and it requires Envision to establish a scholarship fund if less than $8 million worth of vouchers are claimed.  If every class member claims vouchers, Envision will pay out approximately $17 million worth of vouchers. Plaintiffs contend that this settlement represents a substantial recovery in light of the risks and costs of continuing litigation.

### a.      The value of the settlement.

The value of the settlement to each class member can be quantified in terms of the values of the vouchers, which is a total of $1250.  These vouchers represent an average savings of about 18%-41% off tuition for future Envision programs and a 45%-54% refund of the tuition paid for

the Conferences.  However, a number of courts have recognized that the actual value of a coupon

to a class member may be less than its face value.  *See, e.g.*, *In re Mexico Money Transfer Litig.*,

267 F.3d 743, 748 (7th Cir. 2001) ("[C]ompensation in kind is worth less than cash of the same

nominal value.")  Here, the parties have structured the settlement agreement in a manner that

seeks to maximize the value of the vouchers to class members.  First, the vouchers are valid for a

period of seven years, during which time Envision plans to offer approximately 2450 conferences

attended by approximately 340,000 students.  *See* Joint Response to Br. *Amicus Curiae* at 6.

Second, the vouchers are fully transferable to other qualifying students, as well as to

family members of the class member (whether or not they otherwise qualify for enrollment at an

Envision program).  Therefore, if a class member is unable to attend another program, he or she

may give it to a younger sibling or attempt to sell it to another student who qualifies to attend an

Envision conference.  The Attorneys General and some objectors argue that the secondary market

for these vouchers is not established and therefore class members may have difficulty finding a

buyer for unused vouchers.  Plaintiffs acknowledged at the Fairness Hearing that no secondary

market yet exists for these vouchers and that it is difficult to predict the ease with which they

may be resold.  Plaintiffs argue, however, that class members should be able to utilize the

internet to find interested buyers, and Envision will maintain a website that explains that

vouchers are transferable.  The Court recognizes that class members seeking to sell their

vouchers to unknown third parties may encounter some difficulties, but the Court also notes that

most class members are students who have a natural network of classmates to whom vouchers

might be sold, and the large number of programs that are offered during the seven-year period

makes it more likely that buyers can be found.  The relatively high value of the vouchers also

makes it more likely that class members will be willing to bear the comparatively minimal transaction costs associated with selling them.

The Attorneys General also contend that the vouchers do not provide meaningful compensation to the class members in light of the fact that a party seeking to utilize a voucher by their calculation must also spend hundreds, if not thousands, of dollars on tuition (which typically includes lodging and meals) and transportation to the location of the program.  They note that although 28 U.S.C. § 1712(d) permits the Court to hear expert testimony on the actual value of coupons awarded, no expert testimony has been proffered by the parties.  During the Fairness Hearing, class counsel indicated that they asked their administrative notice provider to give an estimate as to the redemption value of the vouchers but that the provider was unable to give an estimate due to the variety of conferences provided by Envision.  It is clear, however, that the vouchers will provide meaningful value to those class members who do wish to attend future Envision programs.  Envision has noted that approximately 95% of the attendees at the Conferences had attended a prior program, and Envision's counsel represented at the Fairness Hearing that about ten percent of students attending Envision conferences each year are program alumni.  Envision also noted that 20% of the vouchers issued to claimants who settled prior to this lawsuit have already been redeemed, suggesting there is significant interest among the class in attending future programs.  Indeed, two of the putative class members sent an email to Class Counsel expressing hope that their vouchers would be available in time for use with an Envision program they would like to attend this summer.  *See* Joint Response to Br. *Amicus Curiae*, Exs. D-E.  This suggests that the vouchers do provide meaningful value to the class members.

The value of these vouchers also compares favorably to other coupon settlements that

have come before the federal courts for approval.  For example, in *In re Western Union Money Transfer Litigation*, No. CV-01-0335, 2004 WL 3709932 (E.D.N.Y. Oct. 19, 2004), the court approved a settlement that awarded coupons providing a 13%-40% discount on fees for money transfers.  The coupons were freely transferable, could be used at over 170,000 locations worldwide, remained valid for 35 months, and could be combined with any other discount.  *Id.* at *12-13.  Here, the vouchers represent an 18%-45% discount off tuition costs for future programs, are freely transferable, remain valid for seven years, and can be used at thousands of future programs.

It is also significant that under the terms of the settlement, Envision will have to offer at least $8 million worth of discounts on future programs, representing a substantial disgorgement of profits obtained from the Conferences.  The parties agreed to the $8 million figure because this was the net profit that Envision realized from the Conferences, according to its financial statements.  This completely addresses the *Figueroa* court's concern that coupon settlements do not force defendants to "disgorge ill-gotten gains."  517 F. Supp. 2d at 1302.  Thus, in addition to the personal benefit received by class members through the vouchers, they will receive the benefit of knowing that Envision will not have profited from any wrongdoing.

The Attorneys General note that if at least 6400 class members claim their vouchers, no *cy pres* fund will be created, and it is therefore possible that Envision will end up paying less than $8 million if a substantial number of the vouchers claimed by those class members are never redeemed.  Although there is no guarantee, the Court thinks this is unlikely, for two reasons.  First, class members with no interest in the vouchers are unlikely to claim them in the first place.  Second, the high face value of the vouchers makes it likely that class members who do claim

vouchers will either use them or be motivated enough to find a willing buyer who plans to attend an Envision program.  Therefore, the Court expects that most of the vouchers that are distributed will be redeemed within the seven-year period.  In any event, the heart of the settlement is the value afforded to the class members, which could be as high as $17 million, rather than the $8 million "guaranteed" payment by Envision.[17]

                        b.       Strength of Plaintiffs' claims and likelihood of success at trial.

The value of the settlement must be balanced against the likelihood of obtaining a substantial recovery at trial.  Plaintiffs have asserted three claims in this action: (1) violations of the D.C. Consumer Protection Procedures Act ("CPPA"); (2) negligent misrepresentation; and (3) breach of contract.  The Attorneys General contend that liability "appears likely to be established" on Plaintiffs' CPPA claims, and the CPPA allows private plaintiffs to recover, *inter alia*, treble damages or $1500 per violation, whichever is greater, reasonable attorneys' fees, and punitive damages.  *See* Br. *Amicus Curiae* at 14; D.C. Code § 28-3905(k)(1).  Thus, the Attorneys General argue that Plaintiffs are likely to obtain substantially greater relief at trial than is provided by the vouchers.  However, liability cannot be assumed when evaluating a proposed settlement, and Envision has defenses to this action that it would continue to assert if the settlement is rejected.  Even setting aside the facts of the case, there are practical and procedural obstacles that stand in the way of success at trial.

First, and perhaps most significantly, it is not clear that D.C. law would apply to

---

[17] The Court also notes that it would not be practical to require Envision to add the value of unredeemed vouchers to the CSSF since this value would not be known until the end of the seven-year period, which is also when the CSSF must be depleted under the terms of the Settlement Agreement.

Plaintiffs' claims.  When exercising its diversity jurisdiction, the Court applies the choice-of-law

rules of the forum jurisdiction.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

Under District of Columbia law, courts employ a "modified governmental interests analysis

which seeks to identify the jurisdiction with the most significant relationship to the dispute."

*Washkoviak v. Student Loan Marketing Ass'n*, 900 A.2d 168, 180 (D.C. 2006) (quotation marks

and citation omitted).  Under this analysis, the court evaluates the governmental policies

underlying the applicable laws and determines which jurisdiction's policy would be most

advanced by the application of its law to the facts of the case, taking into consideration (1) the

place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3)

the domicile, residence, nationality, place of incorporation and place of business of the parties;

and (4) the place where the relationship is centered.  *Id.* (quoting *District of Columbia v.

Coleman*, 667 A.2d 811, 816 (D.C. 1995)).  These factors generally point to the application of

either the law of Virginia, where Envision is located and made the representations, or the law of

each class member's home state, where he or she would have received the alleged

misrepresentations and paid for the Conferences.  *See id.* at 180-82; *see also Shaw v. Marriott

Int'l, Inc.*, 570 F. Supp. 2d 78, 86-88 (D.D.C. 2008) (discussing choice of law analysis in

misrepresentation cases), *aff'd in part, rev'd in part*, ___ F.3d ___, 2010 WL 2134277 (D.C. Cir.

May 28, 2010).[18]  Although the choice-of-law analysis for the breach of contract claims might

favor application of District of Columbia law because the place of performance was, in most

instances, the District of Columbia, *see Stephen A. Goldberg Co. v. Remsen Partners, Ltd.*, 170

---

[18] The parties have indicated that only 24 members of the class are District of Columbia
residents.

F.3d 191, 198 (D.C. Cir. 1999), that conclusion is not certain.  In any event, Plaintiffs' breach of

contract claims are more individualized, since they are based not on the representations made to

all class members but the class members' individual experiences at the Conferences, which

varied.  Therefore, the breach of contract claims are less likely to lead to substantial class-wide

relief.

This uncertainty regarding the choice-of-law analysis significantly undermines the

strength of Plaintiffs' claims against Envision and lowers the chance of a substantial recovery at

trial.  If D.C. law cannot be uniformly applied to the class members' claims, then Plaintiffs will

be unable to a large extent take advantage of the CPPA's favorable provisions for consumers,

which include the possibility of treble and punitive damages.  Of even greater concern is that

significant choice-of-law problems make it less likely that a class could be certified for trial

purposes.  Before a global settlement was reached, the *Bowman* plaintiffs had filed a motion to

certify the class, and Envision vigorously opposed that motion, arguing that the requisite choice-

of-law analysis would require the court to apply the law of fifty different states to resolve the

case, making class certification impracticable.  *See* Joint Response to Br. *Amicus Curiae*, Ex. C

(Defendants' Opp'n to Mot. for Class Certification).  Many courts have found that nationwide

class actions raise significant manageability problems when the law from multiple states must be

applied to determine liability.  *See, e.g.*, *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018-

19 (7th Cir. 2002); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir. 1986) (remanding

class certification question to district court to consider whether variations in state law prohibit a

finding of predomination for common questions of law).  Although this Court need not consider

the manageability of a class action when certifying a class for settlement purposes, the Court

notes that choice-of-law questions may render the class action unmanageable such that no class-wide recovery would be possible without a settlement. This factor weighs in favor of approving the parties' agreement.

Another factor to take into consideration is Envision's ability to pay a judgment even if Plaintiffs successfully prosecuted their claims at trial. The parties have indicated that, after Envision already paid out approximately $1 million to settle prior claims arising out of the Conferences, Envision would face severe financial difficulties if forced to provide cash refunds to all the class members. Class counsel indicated at the Fairness Hearing that, based on the financial discovery provided before the mediation, Envision was in default on its bank obligations when negotiations began. According to the mediator, Envision's financial condition was "at the forefront of the settlement discussions," and Envision's Chief Financial Officer was present at the mediation. *See* Joint Response to Br. *Amicus Curiae*, Ex. H (Aff. of Hon. Daniel Weinstein) ¶ 12. Because Plaintiffs did not want to bankrupt the company through a lawsuit (depriving themselves and others of the opportunity to partake in future educational programs as well as potentially being unable to collect any judgment), they agreed to the voucher payment system reflected in the settlement agreement, which allows Envision to pay over time. Plaintiffs' desire to obtain immediate and certain relief weighs in favor of approving the settlement.[19]

---

[19] The Attorneys General contend that "other federal courts have rejected . . . arguments that the defendant's purported precarious financial condition should justify a coupon settlement," citing *Figueroa*. *See* Br. *Amicus Curiae* at 15. However, the *Figueroa* court did not say that financial condition could not be considered as a factor in evaluating settlements, and many federal courts have explicitly considered this. *See, e.g.*, *In re Wireless Telephone Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932-33 (8th Cir. 2005) (requiring district courts to consider a defendant's financial condition when evaluating class action settlement agreements).

3.      Reaction of the Class

There are fifteen objectors to the Settlement Agreement, representing approximately one-tenth of one percent of the entire class.  This relatively low rate of objection weighs in favor of approval of the settlement.  *See Thomas v. Albright*, 139 F.3d at 232 ("[A] settlement can be fair even though a significant portion of the class and some of the named plaintiffs object to it.")  Many of the objectors expressed concern that they could not or would not use the vouchers to attend a future Envision program.  However, that concern is addressed by the fact that the vouchers are transferable to family members or to any other qualifying student and therefore have a nonnegligible resale value.  Other objectors expressed concern that the vouchers covered only partial tuition, and many objectors generally expressed a preference for cash.  The most vociferous objectors demanded that Envision provide a full refund of the tuition paid for the Conferences.  These objections essentially amount to a complaint that the settlement does not provide enough benefits.  However, "[t]he court should not reject a settlement merely because individual class members complain that they would have received more had they prevailed after a trial." *Thomas*, 139 F.3d at 231.  Several objectors complained that the Settlement Agreement did not sufficiently punish Envision for its misconduct and suggested that Envision be required to provide at least a partial refund.  As noted above, however, a cash settlement to all class members would not have been feasible in light of Envision's financial condition, and the scholarship fund provision in the Settlement Agreement ensures that Envision will disgorge substantially all of the profits that it earned from the Conferences.

One objector expressed concern that named class representatives and class counsel receive cash while class members only qualify for tuition vouchers.  However, that concern is

largely addressed by several facts about the negotiation of the settlement.  First, the attorneys' fee and class representative incentive awards were negotiated separately by the parties after a settlement was reached, and the Settlement Agreement expressly states that no portion of the settlement payment shall be reduced to pay attorneys' fees or incentive awards.  Second, the actual amounts awarded will be determined by the Court in ruling on the Plaintiffs' Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards, not by the parties.  Third, Envision's insurers were willing to provide some compensation for class counsel's fees because they were already paying Envision's outside counsel to defend this case under a reservation of rights, and a settlement would avoid additional defense costs.  *See* Joint Response to Br. *Amicus Curiae*, Ex. H (Aff. of Hon. Daniel Weinstein) ¶ 13.  Envision's counsel represented at the Fairness Hearing that its insurers would pay $935,000 for attorneys' fees (roughly 65% of the total), with Envision paying $535,000 (roughly 35%).  Even if that $535,000 cash payment were to be redistributed to class members as part of a cash settlement, each class member would receive less than $40.  It is doubtful that the class members would prefer such a small cash settlement to the $1250 in transferable vouchers they will receive under the settlement agreement.  Whatever the market value of two $625 vouchers may be, it is surely greater than $40.

The Court also notes that none of the objectors expressed a desire to appear at the Fairness Hearing.  The Attorneys General, who did appear at the Fairness Hearing through a representative, argue that their opposition to the Settlement Agreement should counsel against approval of the settlement.  While the Court is not convinced that the Attorneys General's appearance as *amici curiae* alone weighs against approval, the Court has substantively

considered the detailed opposition of the Attorneys General in evaluating the fairness of the settlement agreement and does so further below.

### 4.   The Status of the Litigation at the Time of Settlement

"In determining whether a proposed class action settlement is fair, adequate, and reasonable, courts consider whether counsel had sufficient information, through adequate discovery, to reasonably assess the risks of litigation vis-a-vis the probability of success and range of recovery." *Meijer*, 565 F. Supp. 2d at 57 (quotation marks and citation omitted); *see also Vitamins II*, 305 F. Supp. 2d at 105 (stating that settlement agreements should "not come too early to be suspicious nor too late to be a waste of resources"). In this case, the parties reached a settlement agreement before formal discovery began. However, as noted above, Plaintiffs' counsel conducted significant factual investigation into possible class claims and the financial situation of Envision prior to the mediation. In addition, the parties had fully briefed Envision's motion to dismiss in the *Bowman* action, and Envision had filed its brief in opposition to class certification. The Attorneys General argue that the fact that settlement was reached prior to class certification weighs against approval of the Settlement Agreement. However, in light of the obstacles that Plaintiffs faced in establishing class certification and the information they obtained about Envision's financial condition, the timing of the settlement agreement raises no cause for concern.

### 5.   Analysis

The discussion above shows that the parties have reached a settlement that: (1) provides class members with an immediate benefit that may be of substantial value (representing a 45%-54% refund and a discount of 18%-45% on future programs); (2) disgorges substantially all of

the profits earned by Envision during the Conferences; (3) avoids the costs of future litigation;
(4) eliminates a substantial risk of no class-wide recovery given choice-of-law problems and
Envision's financial condition; (5) was reached during an arms-length negotiation by well-
informed and experienced counsel; (6) has the approval of experienced class counsel and an
experienced mediator; and (7) has the general support of the settlement class, as demonstrated by
the very small number of objectors and the interest among class members to immediately receive
their benefits under the settlement.  In the light of the above analysis, the settlement agreement
appears to be a reasonable compromise of Plaintiffs' claims.

In their brief *amicus curiae*, the Attorneys General argue that this voucher settlement is
comparable to the one that was disapproved by the court in *Figueroa v. Sharper Image
Corporation*, 517 F. Supp. 2d 1292 (S.D. Fla. 2007).  In that case, the plaintiffs brought claims
against Sharper Image for breach of contract, breach of warranty, unjust enrichment, and unfair
business practices relating to representations made regarding the company's Ionic Breeze air
purifiers, for which plaintiffs had each paid hundreds of dollars.  517 F. Supp. 2d at 1300.  The
settlement called for the plaintiffs to receive a $19 coupon, valid for two years, that could be used
towards the purchase of any product at a Sharper Image retail store.  *Id.* at 1303, 1305.  On those
terms alone, it is clear that the vouchers offered by Envision provide substantially more value
than the coupons at issue in *Figueroa*.  In addition, the *Figueroa* court's disapproval of the
settlement was based primarily on the fact that plaintiffs' counsel had negotiated the settlement
from an extremely weak position (on the eve of a ruling that would potentially stay the case) and
did so without conducting a reasonable assessment of strength and value of the plaintiffs' claims.
*Id.* at 1321-23.  The *Figueroa* court also found that the plaintiffs' claims were strong and that the

37

plaintiffs could reasonably expect to recover more than $19 per plaintiff at trial, making the cost

of proceeding to trial worth the small risk of no recovery.  *Id.* at 1327.  The parties in *Figueroa*

had also conducted discovery relating to jurisdiction and class certification and retained experts,

minimizing the added expense of proceeding to trial.  *Id.* at 1328.  All of these factors distinguish

*Figueroa* from this case, where the Plaintiffs compromised an uncertain case in exchange for

valuable consideration during an arms-length negotiation.

The parties' settlement in this case is also distinguishable from two other coupon

settlement cases cited by the Attorneys General, *True v. American Honda Motor Co.*, No. EDCV

07-287, 2010 WL 707338, at *12 (C.D. Cal. 2010) (Feb. 26, 2010), and *Clement v. American

Honda Finance Corp.*, 176 F.R.D. 15 (D. Conn. 1997).  In *True*, the court disapproved a

settlement that would have awarded class members a non-transferable $500 or $1000 voucher

toward the purchase of a new Honda, finding that it represented "at best, a 6.5% discount off the

purchase of a new car, redeemable only within the next nineteen months, just a few years after

they purchased or leased a new Honda."  2010 WL 707338 at *21.  The *True* court also criticized

the settlement for offering cash payments to only a certain subclass of plaintiffs whose prior

complaints could be documented and noted that the settlement was worth substantially less than

settlements obtained by similar claimants.  *See id.* at *10, *14.  Similarly, in *Clement*, the court

disapproved a settlement that would have awarded coupons of $75 or $150 toward the financing

of a new car through American Honda Finance Corp.  *See* 176 F.R.D. at 26-28.  The court found

that the coupons were "essentially worthless" because they expired in two or three years, were

not transferable to third parties, and were virtually worthless compared to the purchase price of a

new car.  *Id.* at 27.  Here, by contrast, the vouchers represent a substantial discount towards

tuition at future programs and are freely transferable to other eligible students.  And although

Envision programs are relatively "big ticket" items for consumers, they are not like cars and

other durable goods that are typically only purchased when a new model is needed to replace an

older one.  Unlike a discount on a new car issued to a person who just purchased a new car, the

vouchers in this settlement have immediate value.

Ultimately, the reasonableness of the settlement agreement must be considered in the

context of this case, not in comparison to terms of other coupon settlements.  Although a cash

settlement would have been preferable to vouchers, Envision is not presently in a position to give

cash to all class members, and their ability to do so after judgment is also doubtful.  It is true that

Envision paid out nearly $1 million to settle claims and complaints that it received in the

immediate aftermath of the Conferences.  However, once those funds were exhausted, the

company's financial situation prevented it from continuing to make cash payments.  The fact that

early claimants received cash does not make this settlement unfair.  The record suggests, and it is

reasonable to assume, that the individuals who filed early complaints and received early

settlements had stronger claims overall than the members of the settlement class (the vast

majority of whom have never formally complained to Envision about their experience at the

Conferences).  The average settlement obtained by the early claimants (roughly $400 cash plus

$750 in vouchers) is actually not far off from the $1250 in vouchers that will be paid to members

of the settlement class.  And relief is more widely available under the settlement agreement:

whereas early claimants had to indicate that they missed parts of the Conferences involuntarily in

order to receive a settlement, class members need only verify that they were "unsatisfied" with

their experiences.  It is also important to note that none of the early claims filed against Envision

resulted in a judicial determination as to liability, so there is no benchmark judgment against which to assess Plaintiff's claims.

The parties crafted the settlement agreement in a manner that would provide meaningful relief to the class members while ensuring that Envision could continue to operate while also disgorging the profits from the Conferences over time.  According to the experienced mediator, "the significant value of the vouchers, their full transferability, the long duration of the time in which they may be redeemed, and the scholarship fund set this settlement apart from other coupon settlements."  Joint Response to Br. *Amicus Curiae*, Ex. H (Aff. of the Hon. Daniel Weinstein) ¶ 15.  Based on the significant recovery that the settlement affords the members of the settlement class, the difficulties faced by the Plaintiffs in litigating this class action, the inherent risks, costs, and time associated with continued litigation, and Envision's financial condition, the Court finds that the settlement is fair, reasonable, and adequate under Rule 23(e) and 28 U.S.C. § 1712(e).  Therefore, the Court shall grant the parties' Joint Motion for Final Approval, except as to the potential *cy pres* fund.

The Court is troubled by the lack of standards governing the distribution of the money from the Class Settlement Scholarship Fund, the potential *cy pres* fund.  Although the parties have amended the settlement agreement to provide that class counsel shall receive semiannual reports on the administration of the CSSF, the fund is to be administered by Envision with nearly complete discretion.  If the amount of money in the CSSF is substantial, there is a risk that Envision will use the scholarships as a promotional tool.  At the Fairness Hearing, class counsel agreed to the Court's proposal that the Court would conditionally approve the CSSF provisions of the settlement agreement until class members filed their claims for vouchers and the exact

40

amount of the CSSF could be determined, at which point the parties could submit a plan of distribution with more detailed eligibility criteria.  The Court shall follow that approach and HOLD IN ABEYANCE final approval as to the plan of distribution of funds in the CSSF until the amount of such funds are known.

## IV.  CONCLUSION

Having considered all of the above-listed factors, the objections, the opposition of the Attorneys General, and the record as a whole, the Court finds that the terms of the settlement agreement are fair, reasonable, and adequate and should be approved.  The Court finds that it has jurisdiction over this action, and there is no dispute that class may be certified for settlement purposes.  The Court finds that the settlement agreement was negotiated at arms-length by experienced counsel with the assistance of an experienced mediator after an appropriate amount of investigation and informal discovery, and it is the opinion of the experienced counsel and mediator that the settlement is fair, adequate, and reasonable.  The Court finds that the vouchers to be awarded under the settlement agreement provide meaningful value to class members because of their high face value ($1250, representing a 45%-54% refund and an 18%-45% discount toward future programs), their transferability, and their seven-year duration.  The Court also finds that choice-of-law issues and Envision's financial condition significantly undermine Plaintiffs' likelihood of obtaining meaningful class-wide relief at trial.  The Court finds that the settlement is supported by the class, as demonstrated by the low number of objectors and opt-outs.  The Court also finds that the *cy pres* fund, if properly administered, will ensure that Envision substantially disgorges the profits from its alleged misconduct.

Therefore, the Court shall overrule the objections to the settlement agreement and

GRANT the parties' [24] Joint Motion for Final Approval of the Settlement Agreement. Because the Court has concerns about the distribution of proceeds from the proposed *cy pres* fund, the Court shall HOLD IN ABEYANCE approval of the Class Settlement Scholarship Fund and revisit that issue after the class members have submitted their claims for vouchers and the amount of money to be deposited into the CSSF is determined.  The Court shall order the parties to file a Joint Status Report after the claims period has ended and all claims have been received so that the Court may make a final ruling at that time.  The Court shall also HOLD IN ABEYANCE Plaintiffs' [25] Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards and address those issues at a later date.  An appropriate Order accompanies this Memorandum Opinion.

                              */s/*_____
                              **COLLEEN KOLLAR-KOTELLY**
                              United States District Judge